UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JAMES H.[1],

             Plaintiff

      v.

LELAND DUDEK, Acting
Commissioner of Social Security,

          Defendant.

Case No. 2:24-cv-05631-GJS

**MEMORANDUM OPINION AND
ORDER**

      Plaintiff filed a complaint seeking review of the denial by the Social Security Administration ("SSA") – sued through its Acting Commissioner of Social Security ("Commissioner") – of Plaintiff's applications for Supplemental Security Income and Child's Insurance Benefits.  The parties filed briefs addressing the disputed issue in the case [Dkt. 11 and 14].  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the undersigned for all purposes.  [Dkt. 16.]  The Court has taken the parties' briefing under submission without oral argument.  For the reasons discussed below, the Court finds that this matter should be affirmed.

---

[1]    In the interest of privacy, this Order uses only the first name and the first initial of the last name of the non-governmental party.

# I.    ADMINISTRATIVE PROCEEDINGS

## A.    Agency Proceedings

Plaintiff filed his applications for benefits on September 14, 2021.  He alleged that his disability began on April 9, 2018, and was the result of a spinal tumor, severe anxiety, and phobias.  [Administrative Record, Dkt. 7-1 through 7-8 ("AR") 17, 131-33, 259-72.]  On December 14, 2021, the SSA denied Plaintiff's applications initially, and on April 28, 2022, the SSA denied them again on reconsideration.  [AR 134-43, 145-50.]  Plaintiff requested a hearing, which was held before an administrative law judge ("ALJ") on August 30, 2023.  [AR 38-62.]  On September 18, 2023, the ALJ issued a written decision that was unfavorable to Plaintiff.  [AR 14-37, the "Decision."]  Plaintiff appealed, and on May 8, 2024, the Appeals Council denied review.  [AR 1-5.]

## B.    Administrative Decision Under Review

In his Decision,[2] the ALJ applied the five-step sequential evaluation process. [AR 18.]  *See* 20 C.F.R. § 416.920(b)-(g)(1).  At step one, the ALJ found that Plaintiff had not attained the age of 22 as of, and has not engaged in substantial gainful activity since, his alleged onset date.  [AR 19.]  At step two, the ALJ found that Plaintiff suffered from the following severe impairments:  malignant neoplasm of the spinal cord status post laminectomy; anxiety disorder; depressive disorder; and bipolar disorder.  [*Id.*]  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals

---

[2]    The ALJ's Decision addressed both the physical and mental impairments alleged by Plaintiff.  As discussed below, Plaintiff raises only a single issue in this case related to whether a particular mental functional limitation found was properly accounted for by the ALJ in the residual functional capacity ("RFC") he assessed. Plaintiff does not challenge the ALJ's findings with respect to his physical or mental impairments, or the ALJ's treatment of the medical evidence, or whether the ALJ properly accounted in the RFC for the other functional limitations he found, or any other such claims.  Accordingly, both directly below and in its analysis, the Court has discussed the Decision, Plaintiff's statements and testimony, and the medical evidence only insofar as they pertain to the specific claim raised in this case.

the severity of one of the listed impairments.  [AR 20-22.]  At step four, the ALJ

found that Plaintiff has the RFC "to perform light work as defined in 20 CFR

404.1567(b) and 416.967(b)."  [AR 23-29.]  Specifically, the ALJ identified various

physical and exertional efforts Plaintiff could perform and, of relevance here, found

that "he can do nonpublic, simple, routine and repetitive tasks."  [AR 23.]  The ALJ

further found that Plaintiff had no past relevant work, but he could perform other

work such as a machine pack assembler (DOT[3] 920.687-122), racker (DOT

524.687-018), or small products assembler (DOT 739.687-030), which were light,

unskilled work with SVPs[4] of 1 and 2.  AR 30.]  The ALJ determined that Plaintiff,

therefore, is not disabled.  [AR 31.]

## II.    THE PERTINENT RECORD

The Administrative Record contains medical evidence and testimony

regarding all of Plaintiff's impairments, both physical and mental.  Much of that

evidence, however, is not relevant here given the discrete nature of Plaintiff's single

claim.  The Court will discuss only those portions of the record pertinent to

Plaintiff's claim, *i.e.*, that relate to a moderate mental limitation found with respect

to the functional area of adapting or managing oneself and the RFC.  [*See* AR 22.]

### A.    Plaintiff's Statements And Testimony

Plaintiff testified at the hearing before the ALJ.  Plaintiff has had one job

since high school – working part-time for two months at a Farmer Boys restaurant.

He had to stop working due to his anxiety.  [AR 48-49.]  He does not drive due to

his anxiety, and he does not take public transportation, because he panics unless his

mother is present with him.  [AR 49-51.]

Plaintiff has been under psychiatric care since he was a child.  He takes

---

[3]    *Dictionary of Occupational Titles* (U.S. Department of Labor, 1991).

[4]    Specific Vocational Preparation, as defined in DOT, Appendix C.

3

medication for anxiety, depression, and sleep, and they help "minimally" and relieve his symptoms "mildly," but he still has a lot of anxiety and depression.  [AR 51-52.]

When asked about obstacles to working, Plaintiff stated that he gets so anxious that he cannot think and freezes up.  He forgets what he is doing and has to be reminded.  He also gets shaky and throws up.  This happens not only at work but also at home and in a store.  Plaintiff's panic attacks last anywhere from an hour to all day.  He takes Lorazepam when he has a panic attack.  [AR 54-55.]

In his Function Report, Plaintiff stated that he cannot drive and avoids social situations due to his anxiety.  [AR 318.]  He showers more than once a day because it helps with his anxiety.  [AR 319.]  He engages in light yard and housework, including watering plants, laundry, vacuuming, doing the dishes, and taking out the trash.  [AR 320.]  Plaintiff does some light cooking and baking, plays the violin, knits and crochets, draws, does arts and crafts, scrolls through Tik-Tok, listens to music, and watches tv.  [AR 319-20, 322.]  When he feels "good enough," he takes care of his cat.  [AR 319.]  He goes to the grocery store once a week for 30 minutes to an hour, accompanied by someone else.  [AR 321-22.]  Plaintiff stated that he gets along "pretty good" with authority figures.  [AR 323.][5]

**B.**   **Medical Evidence**

Plaintiff reported to the doctors treating him for his spinal problem that he smoked cannabis for his physical pain.  [AR 413, 416, 423.]  On November 26, 2019, a treating physician reported that Plaintiff had an appropriate mood and affect.  [AR 574.]

On December 3 and 17, 2020, a nurse practitioner (Aizzel Trieu) reported that Plaintiff had good eye contact, was alert and oriented, showed no memory or concentration/attention deficits, and had a clear and coherent thought process,

---

[5]   In 2018, Plaintiff reported to his doctor that he had visited Disneyland.  [AR 397.]

4

although he reported that he was sad, depressed, anxious, lacked motivation, and slept poorly. [AR 695, 697.] In January 11, February 11, March 11, April 1 and 9, May 7, July 16, August 19, September 24, and October 22, 2021 telephonic consultations with NP Trieu, Plaintiff's mental status evaluations were again primarily normal, with, *inter alia*, a euthymic mood, good concentration, and no deficit in concentration or attention, and Plaintiff reported that he felt better and did not wish to take antidepressants. [AR 699, 701, 705, 707-14, 718, 722, 724.] On November 15, 2021, Plaintiff's mental status examination was normal, although NP Trieu described his mood as sad, depressed, and anxious. [AR 769.] On December 13, 2021 and January 12, February 10, and March 10, 2022, Plaintiff's mental status examinations by NP Trieu were again primarily normal and his mood was euthymic on the December, February and March visits, although labile on the January visit. [AR 765-68.] On March 24, 2022, Plaintiff's mental status examination again was normal, but his mood was labile and irritable. [AR 764.] On April 28, May 26, June 16, and July 29, 2022, Plaintiff's mental status examination was normal and his mood was euthymic. [AR 824-28.] On August 15, 2022, Plaintiff reported to NP Trieu that he had stopped most of his medications and had increased anxiety, anger, and irritability and unstable mood swings. [AR 823.] On August 25, 2022, Plaintiff's mental status examination was normal and his mood euthymic. [AR 822.] On September 14, 2022, Plaintiff's mental status examination was normal but his mood was sad, depressed, and labile. [AR 821.] On September 27, October 27, and November 23, 2022, Plaintiff's mental status examinations were normal and his mood euthymic. [AR 816, 819-20.] On December 22, 2022, Plaintiff's mental status examination was normal but his mood was anxious. [AR 815.] [6]

---

[6]    On September 14, 2022, NP Trieu opined that Plaintiff had moderate to marked to extreme limitations in all work-related mental functions, including an extreme limitation in adaptability. [AR 772-74.] The ALJ found the NP's opinion to be unpersuasive, because it was inconsistent with the evidence of record, including her own evaluations. [AR 29.] Plaintiff has not challenged that ALJ's

On January 26, February 23, March 23, April 20, and May 18, 2023, Plaintiff was seen by a different nurse practitioner (Lynda Akoto). His mental status examinations showed that he was awake and alert, had a calm and pleasant mood, had an appropriate affect, had a linear, coherent and organized thought process, and appropriate attention and concentration. Plaintiff reported that he has daily anxiety and panic attacks once or twice a year, and that he occasionally uses marijuana. [AR 775-82, 792-801.][7]

### III.    PLAINTIFF'S CLAIM

Plaintiff contends that the ALJ committed legal error, because although the ALJ assessed a moderate functional limitation in adapting and managing oneself, the ALJ failed to account for that limitation in crafting the mental RFC.

### IV.    GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012); *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008). "Substantial evidence … is 'more than a mere scintilla' … [i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted); *see also Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) ("Substantial evidence is more than a

---

finding, and thus, the Court will not consider this opinion rendered by NP Trieu further.

[7]    On August 17, 2023, NP Akoto opined as to Plaintiff's mental functional limitations. [AR 831.] The ALJ found her opinion unpersuasive [AR 29] and Plaintiff has not challenged that finding. Accordingly, the Court will not consider that opinion further.

1    mere scintilla but less than a preponderance.") (internal quotation marks and citation

2    omitted).

3          The Court will uphold the Commissioner's decision when "'the evidence is

4    susceptible to more than one rational interpretation.'" *Burch v. Barnhart*, 400 F.3d

5    676, 681 (9th Cir. 2005) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.

6    1989)).  However, the Court may review only the reasons stated by the ALJ in the

7    decision "and may not affirm the ALJ on a ground upon which he did not rely."

8    *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  The Court will not reverse the

9    Commissioner's decision if it is based on harmless error, which exists if the error is

10   "inconsequential to the ultimate nondisability determination, or that, despite the

11   error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*,

12   806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

13

14                          **V.    DISCUSSION**

15         Before making the step four and five determinations, the ALJ first must

16   determine the claimant's RFC.  20 C.F.R. § 416.920(e).  The RFC is "the most [one]

17   can still do despite [his or her] limitations" and represents an assessment "based on

18   all the relevant evidence."  20 C.F.R. § 416.945(a)(1).  An RFC determination is a

19   legal decision that is expressly reserved for the Commissioner.  "[I]t is the

20   responsibility of the ALJ, not the claimant's physician, to determine residual

21   functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

22         At step three, following the "special technique" described in 20 C.F.R. §

23   416.920a to determine whether Plaintiff's claimed mental impairments were

24   "severe," the ALJ assessed Plaintiff's degree of functional limitation in four

25   functional areas.  [AR 20-22.]  In the fourth area – adapting or managing oneself –

26   the ALJ found that Plaintiff has a moderate limitation.  The ALJ further found that

27   this moderate limitation would be accommodated by limiting Plaintiff to simple,

28   routine, and repetitive tasks.  [AR 22.]  The ALJ then included that simple, routine,

and repetitive tasks restriction in the RFC he formulated and in the hypothetical he propounded to the vocational expert.  [AR 23, 60.]

Plaintiff argues that, as a matter of law, including a simple, routine, and repetitive tasks restriction in the RFC cannot adequately accommodate a finding of a moderate functional limitation for adapting or managing oneself.  Plaintiff relies on caselaw finding that, as a general matter, limiting a claimant to simple, routine, and repetitive tasks in the RFC without further restrictions fails to encompass a functional mental limitation such as concentration, pace, and persistence.  Defendant, in turn, relies on another line of Ninth Circuit caselaw finding that, when supported by the medical evidence, limitations to simple, routine, and repetitive tasks can account adequately for moderate mental functional limitations.

In the Ninth Circuit, the line of caselaw on which Plaintiff relies has its origin in two unpublished Circuit Court decisions involving the step three concentration, persistence, and pace functional limitation.  These decisions are often described as holding that, as an abstract principle, this particular functional limitation cannot be adequately accommodated through a simple, routine, and repetitive tasks restriction in the RFC.  *See Brink v. Comm'r of Soc. Sec. Admin.*, 343 Fed. App'x 211, 212 (9th Cir. 2009) ("The Commissioner's contention that the phrase 'simple, repetitive work' encompasses difficulties with concentration, persistence, or pace is not persuasive. Indeed, repetitive, assembly-line work . . . might well require extensive focus or speed."); *see also Lubin v. Comm'r of Soc. Sec. Admin.*, 507 Fed. App'x 709, 712 (9th Cir. 2013) ("Although the ALJ found that the [claimant] suffered moderate difficulties in maintaining concentration, persistence, or pace, the ALJ erred by not including this limitation in the residual functional capacity determination or in the hypothetical question to the vocational expert.").  There have been a number of district court decisions in this Circuit relying on *Brink/Lubin* to conclude that when a moderate functional mental limitation is found, adding a simple, routine, and repetitive tasks restriction to the RFC is inadequate to

8

accommodate that restriction.  *See, e.g., Jill R.C. v. O'Malley*, No. 2:22-cv-01663-DJA, 2024 WL 303804, at *5 (D. Nev. Jan. 25, 2024) (collecting cases).

The *Brink/Lubin* line of cases is distinguishable from the line of cases following the published decision of *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), on which Defendant relies.  In *Stubbs-Danielson*, the ALJ did not make a separate step three finding that the claimant had a moderate limitation in concentration, persistence, or pace but, rather, "translated" a physician's conclusions regarding pace and mental limitations into a restriction to "simple tasks."  The Ninth Circuit found that the ALJ's translation adequately incorporated the medical evidence concerning the claimant's impairments and held, as a general rule, that an "assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with the restrictions identified in the medical testimony."  *Id.* at 1174.

Some courts have extended the *Stubbs-Danielson* reasoning to cases in which the ALJ actually did find a moderate limitation in concentration, persistence, and pace at step three and accommodated it by assessing an RFC restricting the plaintiff to simple, routine tasks.  As many courts have reasoned, "the special analysis for mental disorders, which includes an assessment of concentration, persistence, and pace, is a severity analysis [performed at step three] which is distinct from the functional analysis at step five of the sequential evaluation."  *Phillips v. Colvin*, 61 F. Supp. 3d 925, 940 (N.D. Cal. 2014); *see also Israel v. Astrue*, 494 Fed. App'x 794, 796 (9th Cir. 2012) ("The limitations identified in step 3, however, are 'not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3.... The ALJ must consider the step-3 limitations along with 'all of the relevant evidence in the case record,' . . . when forming the RFC.") (citation omitted); *Bordeaux v. Comm'r of Soc. Sec. Admin.*, No. 3:12–cv–01213–JE, 2013 WL 4773577, at *12 (D. Ore. Nov. 18, 2013) (rejecting claimant's argument that the ALJ was required to incorporate into the RFC and the hypothetical to the vocational

expert the particular functional limitations found at step three, because this argument improperly conflated the ALJ's step three analysis with the ALJ's RFC assessment at steps four and five). In this line of cases, "the relevant question is whether the medical evidence supports a particular RFC finding" with regard to the functional limitation in question. *Phillips, supra,*

Thus, for example, in *Wilder v. Comm'r of Soc. Sec. Admin.*, 545 Fed. App'x 638, 639 (9th Cir. 2013), the ALJ rejected a claim of error based on the ALJ's failure to include a step three finding of moderate difficulties in maintaining concentration, persistence and pace in the RFC assessment and in the hypothetical posed to a vocational expert, because the medical evidence did not support any work-related limitation in the claimant's ability to sustain concentration, persistence, or pace and "[s]ubstantial evidence therefore does not support functional limitations more severe than limitation to 'simple, routine, repetitive work' accounted for in the RFC and the hypothetical question posed to the VE." In *Bordeaux*, 2013 WL 4773577, at *13, the court found no error in the ALJ's omission from the RFC of the "specific [concentration, persistence, and pace] finding set out in the special technique," when "a careful review of the medical evidence and the ALJ's decision supports the conclusion that the ALJ's RFC adequately accounted for . . . the 'less than substantial limitations in concentration, persistence and pace at simple work activities' identified by" a physician). In *Mitchell v. Comm'r of Soc. Sec. Admin.*, No. 2:12-CV-0358–CMK, 2013 WL 5372852, at *5 (E.D. Cal. Sept. 25, 2013), the district court found no error based on the plaintiff's complaint that the "ALJ failed to adequately explain how a limitation to simple instructions would fully account for the acknowledged moderate difficulties with concentration," reasoning that: "the special analysis for mental disorders, which includes an assessment of concentration, persistence, and pace, is a severity analysis which is distinct from the functional analysis at step five of the sequential evaluation"; and "the Ninth Circuit has held that a limitation to, as here, simple work adequately captures moderate

10

limitations in concentration, persistence, and pace" (citing *Stubbs-Danielson*).  On appeal, the Ninth Circuit agreed that:  "the special analysis for mental disorders . . . is a severity analysis which is distinct from the functional analysis at step five of the sequential evaluation"; and there was no error in "the ALJ's failure to include his own finding of moderate limitations in concentration, persistence, and pace in the residual functional capacity assessment," because the ALJ had accounted for the moderate limitation "proper[ly]" and "complete[ly]" in the RFC and the hypothetical by limiting the claimant to simple, repetitive tasks, notwithstanding the vocational expert's statement that adding in a moderate limitation as to concentration, persistence and pace would mean no work was available.  *Mitchell v. Colvin*, 642 Fed. App'x 731, 733 (9th Cir. 2016).

As noted by one Judge in this District, the distinction between the Ninth Circuit's decision in *Stubbs-Danielson* and *Brink* is a "well-worn track."  *Juanita S. v. Berryhill*, No. CV 17-7659-MRW, 2018 U.S. Dist. LEXIS 163468, at *6 (C.D. Cal. Sep. 24, 2018).  In *Stubbs-Danielson*, the circuit court concluded that moderate pace limitations may translate into a "simple task" RFC without additional conditions when consistent with the evidence of record.  *Stubbs-Danielson*, 539 F.3d at 1173-74.  That is, an ALJ can "account[ ] for [a claimant's] moderate functional limitations in the residual functional capacity" with a simple work limit.  *Mitchell*, 642 Fed. App'x at 733.  On the other hand, under *Brink/Lubin*, a simple work restriction in an RFC generally does not adequately address a step two/three functional limitation.

The Court finds no error in this case under either the *Brink/Lubin* or *Stubbs-Danielson* lines of cases, because Plaintiff has not shown that the ALJ's inclusion of a simple, routine, or repetitive tasks restriction in the RFC failed to adequately accommodate Plaintiff's moderate functional limitation found at step three.  Significantly, Plaintiff does not identify any evidence of record that renders him unable to do simple, routine, and repetitive tasks.  There is no doctor or other

11

1  medical professional opinion that, if credited, would "translate" into an RFC

2  restriction more severe than the limitation to simple, routine, and repetitive tasks.

3  There also is no doctor or other medical professional opinion that, had it been

4  credited, would "translate" into an inability to perform the three light, unskilled jobs

5  that the vocational expert identified as able to be performed by Plaintiff with the

6  restriction to non-public, simple, routine, and repetitive tasks.[8]

7        Plaintiff simply is incorrect in asserting that the ALJ did not consider

8  Plaintiff's moderate limitation in adapting or managing oneself.  The ALJ did

9  consider that functional limitation, discussed the record evidence, and expressly

10 concluded that the limitation would be "accommodated" by limiting Plaintiff to

11 simple, routine, and repetitive tasks.  [AR 22.]  In doing so, the ALJ found that,

12 despite Plaintiff's moderate limitation, he was "capable of responding to demands,

13 adapting to changes, managing psychologically based symptoms, distinguishing

14 between acceptable and unacceptable work performance, making plans for [himself]

15 independently of others, maintaining personal hygiene and attire appropriate to a

16 work setting, and being aware of normal hazards and taking precautions despite his

17 alleged mental impairment."  [*Id.*]  The ALJ surveyed the medical evidence,

18 recounted Plaintiff's various daily activities, and concluded that Plaintiff's "mental

19 status evaluations were mostly within normal limits," further observing that in

20 January and May 2023, he reported "compliance and effectiveness of his

21 medication," a stable mood, motivation and energy, improved sleep, manageable

22 anxiety, decreased anger and irritability, and regular activities of daily living.  [AR

23 22, 27-28.]

24

25 [8]      Plaintiff asserts that the three jobs found "exceed" the step three moderate

26 functional limitation found by the ALJ, but Plaintiff fails to proffer any explanation or basis for this assertion.  All three jobs are light, unskilled work with an SVP of 1

27 or 2, and nothing about their descriptions in the DOT indicates that a person with a moderate limitation in adapting or managing oneself could not perform these jobs.

28

The ALJ gave a detailed consideration to the record of Plaintiff's mental limitations, both in determining their severity at steps two and three and in formulating Plaintiff's RFC at step four.  Plaintiff does not point to any additional evidence that the ALJ failed to consider in reaching his conclusions.  The ALJ's interpretation of the evidence – *viz.*, that it demonstrates that a restriction to simple, routine, and repetitive tasks will adequately accommodate Plaintiff's moderate adapting or managing oneself functional limitation – is not irrational, and when the evidence "'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'"  *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (citation omitted).

While Plaintiff obviously disagrees with the ALJ's conclusion that a simple, routine, and repetitive tasks restriction in the RFC would accommodate Plaintiff's moderate functional limitation in adapting and managing oneself, he does not show that it was error given Plaintiff's failure to identify any medical evidence indicating otherwise.[9]  *See Sabin v. Astrue*, 337 Fed. Appx. 617, 621 (9th Cir.2009) (observing that "[t]he ALJ determined the end result of [claimant's] moderate difficulties as to concentration, persistence, or pace was that she could do simple and repetitive tasks on a consistent basis," and finding no error in an RFC restriction to simple and repetitive tasks when doing so was consistent with the medical evidence and "adequately captured" the tasks the claimant was able to perform despite her step three moderate functional limitation); *Phillips*, 61 F. Supp. 3d at 939-40 ("Moderate limitations do not have to be exactly mirrored in the RFC determination" as long as the relevant medical evidence supports the ALJ's finding as to the appropriate RFC restriction).  "Moderate mental functional limitations – specifically limitations in social functioning and adaptation – are not per se disabling, nor do they preclude the

---

[9]    Again, the ALJ found the two NP opinions assessing more substantial limitations to be not persuasive, and Plaintiff has not challenged the ALJ's treatment of those opinions.  Accordingly, they have no bearing on the claim at issue here.

performance of jobs that involve simple, repetitive tasks." *McLain v. Astrue*, No. SACV 10-1108-JC, 2011 WL 2174895, at *6 (C.D. Cal. June 3, 2011); *see also Rose M.E. v. Saul*, No. 5:20-cv-01199-AFM, 2021 WL 1612091, at *3 (C.D. Cal. April 26, 2021) ("The SSA defines a 'moderate' limitation to mean '[t]here is more than a slight limitation in this area, but the individual can still function satisfactorily.'") (citations omitted).  "Although a limitation to simple and repetitive tasks (or similar verbiage) is not a catchall accommodation for all mental limitations, it is notable that 'district courts throughout the Circuit have [ ] concluded a claimant's low tolerance for stress or moderate limitations in dealing with changes are encompassed in a residual functional capacity of simple, repetitive tasks.'" *Trede v. Commission of Social Security*, No. 1:23-cv-1691-GSA, 2024 WL 4855271, at *5 (E.D. Cal. Nov. 20, 2024) (citation omitted and collecting cases).

At its core, Plaintiff's argument is that an RFC restriction to simple, routine, and repetitive tasks cannot constitute an accurate translation or accommodation of a claimant's moderate difficulties with adapting or managing oneself as an unassailable legal proposition, not that this is so based on the particular facts of his case.  Plaintiff's "as a matter of law" type argument is unpersuasive in light of *Stubbs-Danielson* and the numerous Ninth Circuit and District Court cases since then making clear that a step three functional limitation need not be mirrored precisely in an RFC assessment as long as the medical evidence of record supports the accommodation made for that limitation in the RFC.  And Plaintiff has failed entirely to show any "as applied" type error, as he has not shown that the medical evidence of record that was properly credited required any further restriction and accommodation in his RFC for the step three functional limitation than he received.  On this record, Plaintiff has failed to demonstrate that the ALJ failed to adequately translate his moderate limitation in adapting or managing oneself when formulating the RFC.  As substantial evidence supports the ALJ's RFC formulation in this respect, no error occurred.  Reversal and remand, therefore, are not required.

1

## VI.    CONCLUSION

For all of the foregoing reasons, the Court:

(1) denies Plaintiff's request for an order remanding this case to the Commissioner for the immediate payment of benefits or for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g) consistent with the Order Accepting this Report and Recommendation;

(2) affirms the decision of the Commissioner; and

(3) directs that Judgment be entered dismissing this action with prejudice.

DATED: April 25, 2025

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE